Micky D. BRITT, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 86–207.

Supreme Court of Wyoming.

April 1, 1987.

Wyoming Public Defender Program: Leonard D. Munker, State Public Defender; Martin J. McClain, Deputy State Public Defender; Cheyenne; Wyoming Defender Aid Program: Gerald M. Gallivan, Director, and Matthew H. Mead, Student Intern, Laramie, for appellant.

A.G. McClintock, Atty. Gen., Allen C. Johnson, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., S. Jane Caton, Asst. Atty. Gen., Cheyenne, for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

BROWN, Chief Justice.

This appeal is from the District Court of Fremont County after appellant was found guilty of aggravated burglary, and sentenced to a term of not less than five nor more than ten years in the penitentiary.

The issues on appeal are:

"I

"Is a gun for purposes of Wyoming Statute Section 6–1–104(iv) (1977) always to be considered a deadly weapon without regard to the manner it is used or is intended to be used?

"II

"Is it proper to convict a person under Wyoming Statute Section 6–3–301(a)(c)(i) (1977) when the only weapons in the possession of the defendant are weapons obtained in the course of the burglary?

"III

"Where the statute may be read in two equally reasonable ways, is the defendant entitled under the rule of lenity to have the doubt resolved in his favor?"

We will affirm.

On October 13, 1985, at about 10:30 p.m., appellant Micky Britt and two companions went to The Depot, a complex containing three businesses: the Frontier Gun Shop, The Breadboard and the Chamber of Commerce office. Earlier they had decided to burglarize the gun shop. After parking their vehicle a short distance from The Depot appellant threw a stone through The Breadboard window, apparently to see if there was a burglar alarm. He then ran back to the car where the others were waiting. The three drove around for about fifteen minutes, and then went back to The Depot. At The Depot they went through the window to get inside The Breadboard,

thence into the adjoining Frontier Gun Shop.

Once inside the Frontier Gun Shop, the trio took ten weapons, some semi-automatic, and some fully automatic, and ammunition. One weapon was a Beretta .22 caliber automatic with silencer. Thereafter, a loaded gun was taken by Billie DeHerrera. During the burglary none of the three used nor threatened to use the guns.

While appellant admitted to the facts just recited, he maintains that he is not guilty of aggravated burglary. He argues that a gun is not a deadly weapon unless it is used in a manner or intended to be used in a manner reasonably capable of producing death or serious bodily injury. Appellant contends that an aggravated burglary conviction is improper when guns gained in the course of the burglary are taken as loot, and not used or intended to be used in a manner reasonably capable of producing death or serious bodily injury. Appellant also argues that if there is an ambiguity in the deadly weapon statute it must be resolved in his favor.

In a trial before the court, sitting without a jury, appellant was found guilty of aggravated burglary as charged.

## I

Section 6–1–104(a)(iv), W.S.1977 (June 1983 Replacement), provides:

" 'Deadly weapon' means but is not limited to firearm, explosive or incendiary material, motorized vehicle, an animal or other device, instrument, material or substance, which in the manner it is used or is intended to be used is reasonably capable of producing death or serious bodily injury."

In *Meadows v. Commonwealth*, Ky. App., 551 S.W.2d 253, 256 (1977), the court cited with approval:

"The established rule on the subject is that where the weapon is of such character as to admit of but one conclusion in that respect, the question whether or not it is deadly * * * is one of law; but where the weapon employed is such that its deadly character depends upon the manner and circumstances of its use, the

question is one of fact for the jury. [Citations.]" *Owens v. Commonwealth*, 187 Ky. 207, 218 S.W. 719, 720 (1920). See also, *Simmons v. State*, Wyo., 674 P.2d 1294 (1984); *Evanson v. State*, Wyo., 546 P.2d 412 (1976); *Shafsky v. State*, Wyo., 526 P.2d 60 (1974).

According to Black's Law Dictionary, p. 359 (5th Ed.1979) a "deadly weapon per se" is defined as "[a] weapon which of itself is deadly or one which would ordinarily result in death by its use; e.g., gun."

The court heard ample testimony to conclude that these guns were "deadly weapons."

"(THE WITNESS): This is a Beretta .22 automatic with a silencer on the front of it. * * * But it is not fully automatic, but it is very silent, and I guess that's what it's used for, assassinations, if you've seen them on television or some of the movies and stuff.

"THE COURT: Is there any logical use that a sportsman would have for a silencer?

" * * *

"Q. Under the laws of the State of Wyoming, a silenced weapon is not legal for hunting; is it, sir?

"A. I don't believe it is, no. It's not legal to hunt.

"THE COURT: So this gun is just used for one purpose, and that's to kill people?

"THE WITNESS: Yes, Ma'am. That's the only thing I can think it would be used for."

■ It is difficult to imagine that the weapons stolen in this burglary, particularly the gun with a silencer, had any purpose other than to kill people.

We hold, therefore, that the trial court correctly determined that, as a matter of law as well as a matter of fact, the guns stolen from the gun shop were "deadly weapons" as defined by § 6–1–104(a)(iv).

## II

■ In his second issue appellant argues that the weapons were merely "loot" and

that he did not intend to use them in the burglary; therefore, he cannot be guilty of aggravated burglary.

Section 6–3–301(c)(i), W.S.1977 (June 1983 Replacement), provides:

" * * *

"(c) Aggravated burglary is a felony punishable by imprisonment * * * if, in the course of committing the crime of burglary, the person:

"(i) Is or becomes armed with or uses a deadly weapon or a simulated deadly weapon."

According to the statute there are several different acts that may constitute aggravated burglary—one being that when, in the course of committing a burglary, the actor "becomes armed with" a deadly weapon. A plain reading of the statute indicates that using a deadly weapon is not required in order to constitute aggravated burglary.

" * * * A person is 'armed' with a deadly weapon when such weapon is within his immediate control and available for use in the crime." *State v. Romero,* 135 Ariz. 102, 659 P.2d 655, 658 (1982).

Appellant seems to suggest that there is a meaningful distinction between possession of a deadly weapon and "armed with a deadly weapon." Under the circumstances of this case, however, there is no significant difference between being in possession and being armed.[1]

By enhancing the penalty for burglary, while armed with a deadly weapon, the legislature apparently intended that both the use and the possession of a deadly weapon be deterred. Possession of a deadly weapon inside a building or fleeing from the building certainly tends to escalate a dangerous situation. A burglar might very well enter a building not intending to use a weapon but if he were confronted by the police or owner of the building while inside or fleeing, use of the weapon in some manner would likely follow. It seems obvious

that the legislature intended that any possession of a deadly weapon be discouraged. Potential dangerousness is a distinguishing factor between simple burglary and aggravated burglary. *Meadows v. Commonwealth,* supra.

The notion that guns taken as "loot" in a burglary are not "deadly weapons" was addressed in *State v. Luna,* 99 N.M. 76, 653 P.2d 1222 (App.1982). There the New Mexico court determined that such a contention failed to recognize the legislative intent of the aggravated burglary statute which was aimed at deterring both the stealing of guns and the use of firearms during the perpetration of a burglary. We agree with the New Mexico court.

### III

In appellant's third issue he contends that if there is any ambiguity in § 6–1–104(a)(iv), it must be resolved in favor of appellant. We do not disagree. In this case, however, the statute which defines "deadly weapon" is not ambiguous. See § 6–1–104(a)(iv). The intent of the legislature in passing the aggravated burglary statute, § 6–3–301(c)(i), would be defeated if the strained interpretation of the "deadly weapon" statute that the appellant proposes were to prevail.

As stated earlier in *State v. Luna,* supra, the defendants asserted that because they took guns as "loot" they were not armed with a deadly weapon. That court, however, found that such an interpretation failed to recognize the legislative intent of the aggravated burglary statute to deter both the stealing of guns and the possession or use of firearms during the course of a burglary. Id., 653 P.2d at 1223. The court explained that:

"The adoption of several statutes (classifying aggravated burglary), evinces a clear legislative intention to deter the commission of burglaries and the possession of firearms during such crimes.

---

1. Arguably, under some circumstances (not present here), it might be appropriate to make a distinction between being in possession and being armed with a deadly weapon. Appellant might be asking this court to give him guidance

by describing circumstances under which a burglar could steal guns and not be subject to the aggravated burglary statute. We decline to give this advice.

The legislature has provided that a defendant who commits a crime when armed with a deadly weapon or who arms himself with a firearm during the perpetration of the crime should receive a greater sentence * * *." Id. [653 P.2d] at 1223.

This court recently addressed the issue of statutory interpretation in *Oakley v. State*, Wyo., 715 P.2d 1374 (1986), quoting the principles explained in *State v. Stern*, Wyo., 526 P.2d 344 (1974), stating,

" ' * * * that where legislative intent is discernible a court should give effect to that intent [Citation.] and that while generally speaking penal statutes are to be strictly construed, they need not be given over narrow meanings in disregard of the obvious purpose of the legislative body [Citations.].' " Id. [715 P.2d] at 1380.

As stated in *Oakley v. State*, supra, at 1380: "This court seeks to avoid absurd results otherwise occasioned by strained interpretations. * * *" It would be absurd for this court to determine that the items stolen from the Frontier Gun Shop did not fit in the category, "deadly weapons."

We hold that appellant was properly charged and convicted under the aggravated burglary statute.

Affirmed.